## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CRYSTAL HENLEY, Individually** | ) | |
| **And as Guardian of the Person of** | ) | |
| **CHRISTINA HENLEY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-21-118-HE** |
| | ) | **HONORABLE JOE HEATON** |
| **WALGREEN CO. a foreign for profit** | ) | |
| **business corporation d/b/a** | ) | |
| **WALGREENS STORE #03645,** | ) | |
| **WALGREENS PHARMACY, INC.,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | **ATTORNEY LIEN CLAIMED** |

## FIRST AMENDED COMPLAINT

COME NOW Plaintiff Crystal Henley, individually and as Guardian of Christina Henley (hereafter "Plaintiffs"), by and through the undersigned counsel, and for their Cause of Action against Defendants, allege and state as follows:

### JURISDICTION AND VENUE

1.     Plaintiff Crystal Henley (hereafter "Crystal") is a resident and citizen of Oklahoma County, Oklahoma.

2.     Plaintiff Christina Henley (hereafter "Christina") is a resident and citizen of Oklahoma County, Oklahoma.

3.     Crystal Henley is the duly appointed Guardian for Crystal Henley appointed under the laws of the state of Oklahoma due to the incapacity of Christina Henley in

Oklahoma County District Court Case PG-2021-261, In the Matter of the Guardianship of Christina Henley.

4.     Defendant, Walgreen Co. d/b/a Walgreens, is a foreign corporation licensed to and doing business in the State of Oklahoma and is alternatively known as or doing business as Walgreens Pharmacy, Inc. and, specifically, as Walgreens Store #03645 (hereafter referred to as "Walgreens" or "Defendants").

5.     Walgreens is a both a distributor of prescription opioids and a retail dispenser of prescription opioids through a national chain of pharmacies operating over 9,000 retail pharmacies throughout the country.

6.     The acts complained of herein occurred in Oklahoma County, Oklahoma, involve issues of diversity of citizenship and have amounts in controversy in excess of $75,000.00; therefore, venue and jurisdiction are proper before this honorable Court.

## FACTUAL ALLEGATIONS

7.     On or about January 25, 2019, Crystal was prescribed twelve (12) Hydrocodone/Acetaminophen tablets ("the Medication") by Dr. Christopher Bradshaw of St. Anthony's Hospital.

8.     The Medication prescribed is a Schedule II drug pursuant to the Federal Controlled Dangerous Substances Act and the Oklahoma Controlled Dangerous Substances Act.

9.     On or about January 26, 2019, Chris L. Yohannan was a pharmacist licensed by the State of Oklahoma under license number 16241 and was employed by Walgreens in

that capacity at Store #03645.   Yohannan was also the Pharmacy Manager for the Walgreens store.

10.   On or about January 26, 2019, Donald Rolen was a Pharmacy Tech licensed by the State of Oklahoma under license number 23821. Rolen was employed as a Pharmacy Tech for the Store #03645.

11.   On or about January 26, 2019, Alyssa Haynes was a Pharmacy Tech licensed by the State of Oklahoma under license number 23680. Haynes was employed as a Pharmacy Tech for Store #03645.

12.   On or about January 26, 2019, Walgreens employees Chris L. Yohannan, Donald Rolen and Alyssa Haynes were working in the course and scope of their employment at Walgreens Store #03645.

13.   On or about January 26, 2019, Crystal presented her written prescription for the Medication to the pharmacy at Walgreens Store #03645.

14.   The prescription was received by Pharmacist Chris L. Yohannan, Pharmacy Technicians Donald Rolen and Alyssa Haynes, and/or other unidentified Walgreens employees at Walgreens Store #03645.

15.   Upon information and belief, Crystal's prescription was processed, prepared and dispensed by Pharmacist Chris L. Yohannan, Pharmacy Technicians Donald Rolen and Alyssa Haynes, and/or other unidentified Walgreens employees.

16.   Walgreens employees Chris L. Yohannan, Donald Rolen, Alyssa Haynes and/or other unidentified Walgreens employees dispensed the prescription written to Crystal Henley in a bottle incorrectly labeled with the name Christina Henley.

17. Chris L. Yohannan, Donald Rolen, Alyssa Haynes and/or other unidentified Walgreens employees were acting in the course and scope of their employment with Walgreens when they received, processed, and filled Crystal's prescription incorrectly under the name of Christina Henley. Christina's name.

18. Chris L. Yohannan, Donald Rolen, Alyssa Haynes and/or other unidentified Walgreens employees failed to comply with state and federal law and industry standards in properly and accurately labeling the prescription bottle containing the Medication.

19. On or about January 26, 2019, Crystal returned to her home and stored the bottle containing the Mediation in a medicine cabinet in the bathroom.

20. Crystal and Christina are siblings who live together and share the bathroom in their home which contains the medicine cabinet.

21. Prior to the events described in this Complaint, Christina's disabilities limited her ability to live independently but did not otherwise impair her ability to care for herself on a day-to-day basis.

22. Crystal has been Christina's longtime primary caretaker, has claimed Christina on her taxes as a dependent for such time, and has been her attorney-in-fact since 2015.

23. Christina suffers from anaphylaxis to paracetamol, also known as "anaphylaxis Tylenol," which is a severe allergy to acetaminophen that can cause anaphylactic shock and/or seizures.

24. On or about January 30, 2019, Christina complained of a toothache to Crystal.

4

25.     Thereafter, Crystal instructed Christina to take one of Christina's properly prescribed ibuprofen tablets.

26.     On or about January 30, 2019, unbeknownst to both Christina and Crystal, Christina ingested the hydrocodone prescribed to Crystal but improperly dispensed in Christina's name.

27.     Between January 30, 2019 and February 3, 2019, Christina ingested several doses of the Medication containing acetaminophen which were labeled with her name.

28.     On or about Sunday, February 3, 2019, Christina suffered a Grand Mal seizure.

29.     Prior to February 3, 2019, Christina had not suffered from a Grand Mal seizure for approximately twenty (20) years.

30.     On or about Monday, February 4, 2019, Crystal contacted Christina's primary care physician regarding the Grand Mal seizure and was instructed to search the home for any possible known allergens.

31.     On or about February 6, 2019, Crystal discovered that the Medication was in a bottle that erroneously listed "Christina Henley" as the patient on the label, instead of "Crystal Henley" as the prescription had been originally written by Dr. Bradshaw.

32.     Walgreens has filled prescriptions for Christina for many years and therefore knew or should have known of Christina's allergies, including her deathly allergy to acetaminophen.

33.     As a result of Walgreens' negligence, Christina continued to suffer Grand Mal seizures which caused her to lose the ability to care for herself independently as she had for many years prior to Walgreens' error with the Medication.

34.     Prior to the facts alleged herein Christina could conduct many tasks alone, such as but not limited to, walking to the store, and making purchases, preparing meals for herself, taking medications as prescribed by her physicians, and otherwise caring for her basic needs.

35.     Since February 3, 2019, Christina is no longer capable of tending to her own basic needs; has severe short term memory limitations; and exhibits behaviors that are wholly inconsistent and counter to the personality traits she exhibited prior to these events.

36.     As a result of Christina's new limitations Crystal must now provide additional medical services for Christina's care.

37.     As a result of Christina's new limitations Crystal must supervise Christina.

38.     As a result of Christina's new limitations Crystal must take time off work to tend to Christina's needs.

39.     As a result of Christina's new limitations Crystal must perform more household chores.

40.     As a result of Christina's new limitations Crystal has lost the comfort and companionship Christina provided.

## THE UNITED STATES OPIOID CRISIS

41.     This case involves the wrongful control, dispensing, and distribution of opioid medications to a patient who was highly allergic to said medication.

42.     Prescription opioids are powerful medications that when used properly control pain for thousands of people with chronic pain conditions, but when used improperly lead to addiction, overdose, and death. When these medications are prescribed or dispensed improperly tragedy can quickly occur.

43.     There is significant data available demonstrating that hundreds of thousands of people in Oklahoma improperly use opioids for illicit, non-medical purposes and the State of Oklahoma has been ranked number 1 in the US for the improper use of opioid medications.

44.     Walgreens has been repeatedly sued by individuals, estates, state governments and tribal nations for fueling the nations opioid crisis and failing to maintain proper controls over the dispensing and distribution of opioid medications.

45.     Defendants have spoken publicly about the opioid crisis and the dangers of the improper distribution and usage of opioid medications.

46.     Defendants' advertising and promotional materials also position itself to its customers as being one that customers and patients can rely on, where their expert pharmacists know and care about their patients. Further Walgreens claims that they only fill appropriate prescriptions for their patients.

47.     Defendants' representations create a duty to reasonably follow through with their statements as they are telling customers to rely on them to protect consumers from the dangers of inappropriate prescriptions of all kinds, not just opioids.

48.     In 2016 Walgreens released a statement that it was leading the fight against prescription drug abuse in Oklahoma and other states.[1]

49.     One Walgreens promotion promotes them as "Expert Pharmacists" where the pharmacists is consulting with a customer claim that the pharmacist gets to know the customers and is always available to answer questions about medications and other needs.

50.     The company tells patients to depend on them for complete and accurate prescription records that available instantly through thousands of nationwide locations.

51.     Walgreens promotes itself as the image of safety and reliability for patient's prescription health needs.

52.     These statements along with the explicit law relating to the distribution of controlled dangerous substances create an obligation on Walgreens and its employees to care for those customers and patients who put their care in the company's hands.

## CAUSES OF ACTION

## COUNT ONE: NEGLIGENCE

53.     Plaintiffs adopt and incorporate the previous paragraphs as if fully set forth herein.

54.     At all times relevant hereto Defendants owed a duty to Plaintiffs to exercise the degree of care, skill, and diligence ordinarily possessed and used by other members of the pharmaceutical profession in good standing under the same or similar circumstances.

---

[1] https://news.walgreens.com/press-center/news/walgreens-leads-fight-against-prescription-drug-abuse-with-new-programs-to-help-curb-misuse-of-medications-and-the-rise-in-overdose-deaths.htm

55.     Defendants have a duty to patients such as Christina Henley and Crystal Henley to ensure they were filling and administering prescriptions safely.

56.     Defendants have a duty to Crystal and Christina Henley in the interpretation and evaluation of prescription orders.

57.     Defendants have a duty to Crystal and Christina Henley in the compounding, dispensing, administering, and labeling of drugs and devices except for drugs prepackaged by the manufacturers for direct distribution to the patient.

58.     Defendants have a duty to provide reasonable and safe care and treatment in the handling and filling of prescriptions to Crystal Henley and Christina Henley.

59.     Defendants have a duty to accurately fill and dispense prescriptions to Crystal Henley and Christina Henley.

60.     Defendants have a duty to accurately and appropriately advise and counsel Crystal Henley and Christina Henley in the administration of prescription medications.

61.     Defendants have a duty to accurately provide information to Crystal Henley and Christina Henley about drug interactions, contraindications, and other risk factors and information based upon their known medical history and other administered medications and medical conditions.

62.     Defendants have a duty with regard to the participation in drug selection in response to a presented by a patient from a physician.

63.     Defendants have a duty with regard to the understanding proper drug utilization to recognize when medication is being distributed improperly to patients.

64.     Defendants have a duty with regard to counseling and providing information about medication and the therapeutic values, content of medications, hazards of medications and the use of drugs and devices.

65.     Defendants have a duty with regard to reasonably and appropriately offering their services in the practice of pharmacology when performing the acts, service, operations and transitions necessary in the conduct, operation management and control of a pharmacy.

66.     Defendants have a duty to act with good faith and in accordance with the reasonable standard for care when providing pharmaceutical care to patients and customers when dropping off and picking up prescribed medications.

67.     This care was to be in line with what reasonably prudent pharmacist in the same or similar situation would have provided. This duty is also known as the standard of care.

68.     Defendants violated their duties and breached the standard of care when they received a prescription for Crystal Henley and they wrongfully, negligently, knowingly, and intentionally distributed Crystal Henley's prescription to Christina Henley.

69.     Defendants violated their duties and breached the standard of care when they failed to warn Crystal or Christina Henley about the risks to Christina Henley if she ingested the medication with her known drug allergies.

70.     Defendants violated their duties and breached the standard of care when they failed to contact the prescribing physician and inquire as to why Christina Henley was being prescribed a drug that she had a known life-threatening allergy to the medication.

71. Defendants violated their duties and breached the standard of care when they wrongly entered the prescription presented by Crystal Henley into their pharmacy system.

72. Defendants violated their duties and breached the standard of care when they placed the label on a bottle with the name Christina Henley written upon it for medication that was intended for Crystal Henley.

73. Defendants violated their duties and breached the standard of care when they dispensed a controlled dangerous substance to Christina Henley without a written prescription.

74. Defendants knew or should have known that dispensing the medication to the wrong individual was a violation of state and federal law and could result in harm to one or both Henley sisters.

75. Defendants knew or should have known that the drugs prescribed to Crystal Henley were controlled dangerous substances and that they had a duty to carefully dispense said medications to the appropriate party for whom the prescription was written.

76. Defendants knew or should have known that Christina Henley had a life-threatening allergy to acetaminophen and failed to ensure that she was not dispensed a medication to which she had an allergy.

77. By their conduct and failures, Defendants not only failed to prevent foreseeable harm to both Crystal and Christina Henley, but they also created a foreseeable and preventable harm to Christina Henley.

78. Defendants failed to exercise due care under the circumstances and therefore breached the duty owed to Plaintiffs in the following non-exclusive ways:

a. Failing to exercise reasonable care in the provision of prescription medication;

b. Failing to exercise reasonable care in filling prescription medication;

c. Failing to follow proper procedures in administering a controlled substance in violation of state and federal law;

d. Failing to appreciate proper prescription filling procedures for dangerous medications by not reviewing a Patient Prescription History Report and/or contacting the prescribing physician;

e. Representing that the medication dispensed was properly labeled and provided to the patient whom the medication was prescribed;

f. Failing to review patient records and filling a prescription with an ingredient known to be an allergen to the patient;

g. Filling a prescription-only, controlled medication to an individual who had not been prescribed such medication by a licensed physician;

h. Failing to provide appropriate care to Plaintiffs including follow-up care, in failing to properly monitor and assess Plaintiffs' medications;

i. Failing to inform Plaintiffs of the potentially lethal consequences of Christina Henley taking the dispensed medication;

j. Failing to ensure the employees acknowledged, understood, and considered the effects of the dispensed drugs on Christina Henley's other medical conditions;

k. Failed to control its employees to ensure they followed proper policy and procedures;

79. As a direct and proximate cause of Walgreens breach of the standard of care in their care, treatment, and handling of opioid prescriptions for Crystal Henley, Christina Henley suffered permanent physical and mental impairment, damage and disability.

80. Plaintiffs' injuries were a direct and proximate result of the Defendants' actions, omissions, and misrepresentations.

81.     But for the Defendants' negligence in filling the prescription in the wrong name, Christina Henley would not have taken the Medication and suffered serious medical events.

82.     As a direct and proximate result of the negligence of the Defendants Plaintiffs Christina Henley and Crystal Henley have each suffered damages in excess of $75,000.00.

## COUNT TWO: COUNT TWO: NEGLIGENCE PER SE

83.     Plaintiffs adopt and incorporate the previous paragraphs as if fully set forth herein.

84.     At all times relevant hereto Defendants owed a duty to Crystal and Christina Henley comply with federal and state statutes.

85.     Violations of those statutes which cause or contribute to the harm sustained by the plaintiff constitutes negligence *per se*.

86.     Walgreens and Walgreens' pharmacy employees are obligated to comply with state and federal statutes on the regulation and dispensing of controlled dangerous substances.

87.     Walgreens and its employees failed to comply with the state and federal statutes which regulate the storage and distribution of controlled dangerous substances.

88.     Walgreens is required to comply with the Oklahoma Pharmacy Act, 59 O.S. §353 *et. seq*., which addresses the licensing of pharmacy employees, the storage and dispensing of medications, and proper record keeping relating to prescriptions and controlled dangerous substances.

13

89.     Walgreens and its employees failed to comply with the Oklahoma Pharmacy Act and such failure constitutes negligence *per se.*

90.     Walgreens is also obligated to comply with the Federal Controlled Substances Act (CSA), 21 USC §801 *et seq.*

91.     Pharmacies have a corporate level duty to safeguard against the illegal diversion of opioid medications.

92.     Defendants are required to register with the DEA to distribute Schedule II controlled substances. See 21 U.S.C. § 822(a)(1); 21 U.S.C. § 823(b), (e); 28 C.F.R. § 0.100.

93.     As registrants, Defendants are required to "provide effective controls and procedures to guard against theft and diversion of controlled substances." 21 C.F.R. § 1301.71(a).

94.     Defendants are required to "design and operate a system to disclose . . . suspicious orders of controlled substances." 21 C.F.R. § 1301.74(b).

95.     Defendants are required to maintain "complete and accurate record[s]" of "all stocks" on hand and of "each such substance manufactured, received, sold, delivered, or otherwise disposed of by him." 21 U.S.C. § 827.

96.     Defendants are obligated to report loss or theft of controlled substances within one day of the discovery of the theft or loss. 21 C.F.R. § 1301.74(c).

97.     Defendants must maintain accurate records of all controlled dangerous substances "manufactured, received, sold, delivered or otherwise disposed of.." 21 USC §827.

98.     On information and belief Defendants violated their obligations under federal law with the improper dispensing and distribution of opioid medications to Christina Henley.

99.     Pharmacies have obligations and duties under the CSA to provide effective controls and procedures to guard against the diversion of controlled substances and this includes the improper dispensing of these substances. 21 CFR §1301.71(a).

100.    Pharmacies and Pharmacists have a duty to resolve any red flags before dispensing controlled dangerous substances.

101.    It is unlawful to "refuse or negligently fail to make, keep, or furnish any record, report, notification, declaration, order or order form, statement, invoice, or information required" by the CSA. 21 U.S.C. § 842(a)(5).

102.    Pursuant to 21 CFR §1306.14 Schedule II drugs are to be labeled with the name of the patient being prescribed the medication. Additionally, the dispensing institution is required to ensure that there are appropriate safeguards and records regarding the proper administration, control, dispensing, and storage of the controlled substance such as requiring photo identification.

103.    Walgreens and its employees failed to comply with the requirements of the CSA, including but not limited to 21 USC §801 *et seq*, 21 USC §827, 21 CFR §1301.71(a), 21 CFR §1306.14, 21 U.S.C. § 842(a)(5), 21 USC §827, 21 C.F.R. § 1301.74(c). and such failure constitutes negligence *per se*.

104.    Walgreens and its employees did not comply with other state and federal laws on the labeling, distribution and dispensing of controlled dangerous substances and

such failure created a danger to Crystal Henley, Christina Henley and the public at large by contributing to the ongoing opioid crisis impacting Oklahoma and the United States.

105.    As a direct and proximate cause of Walgreens breach of the statutes relating to the care, treatment, and handling of opioid prescriptions for Crystal Henley, Christina Henley suffered permanent physical and mental impairment, damage, and disability.

106.    Plaintiffs' injuries were a direct and proximate result of the Defendants' actions, omissions, and misrepresentations.

107.    But for the Defendants negligence *per se* in filling prescription in the wrong name, Christina Henley would not have taken the Medication and suffered serious medical events.

108.    As a direct and proximate result of the negligence of the Defendants Plaintiffs Christina Henley and Crystal Henley have each suffered damages in excess of $75,000.00.

### COUNT THREE: NEGLIGENT TRAINING AND SUPERVISION

109.    Plaintiffs adopt and incorporate the previous paragraphs as if fully set forth herein.

110.    At all times relevant hereto Defendants owed a duty hire, train, and supervise individuals to properly perform their job functions.

111.    Defendants have a duty to have proper procedures in place which comply with the law in the dispensing of medication, particularly controlled dangerous substances.

112.    Defendants have a duty to train and supervise their employees in the performance of these duties.

113.    Walgreens failed to implement and/or follow proper policies and procedures in compliance with state and federal law on the dispensing of dangerous medication.

114.    Walgreens failed to properly train their employees, specifically Chris L. Yohannan, Donald Rolen, and Alyssa Haynes, on the processing and dispensing of controlled dangerous substances.

115.    Walgreens failed to supervise their employees, specifically Chris L. Yohannan, Donald Rolen, and Alyssa Haynes, on the processing and dispensing of controlled dangerous substances.

116.    Walgreens failed to supervise all individuals practicing pharmacology in the Walgreens pharmacy.

117.    As a result of the negligent training and supervision of Chris L. Yohannan, Donald Rolen, and Alyssa Haynes, Christina Henley was dispensed medication that was not prescribed to her.

118.    As a direct and proximate cause of Walgreens negligent failure to train and supervise its employees regarding the standard of care in their care, treatment, and handling of opioid prescriptions for Crystal Henley, Christina Henley suffered permanent physical and mental impairment, damage and disability.

119.    Plaintiffs' injuries were a direct and proximate result of the Defendants' actions, omissions, and misrepresentations.

120.    But for the Defendants negligent failure to train and supervise its employees in the proper handling and filling of prescriptions resulting in their filling a prescription in

the wrong name, Christina Henley would not have taken the Medication and suffered serious medical events.

121.    As a direct and proximate result of the negligent training and supervision of Defendants' employees Plaintiffs Christina Henley and Crystal Henley have each suffered damages in excess of $75,000.00.

### COUNT FOUR: RESPONDEAT SUPERIOR OF WALGREENS

122.    Plaintiffs adopt and incorporate the previous paragraphs as if fully set forth herein.

123.    Defendants' negligent acts and omissions, as well as the negligent acts and omissions of the pharmacists and staff of Walgreens, occurred while they were engaged in the work assigned to them by Walgreens and occurred within the scope of their employment with Walgreens.

124.    Walgreens is vicariously liable for negligent acts and omissions of its employees.

125.    As a direct and proximate result of the negligence of Walgreens and its actual or apparent agents or employees, Plaintiffs have suffered serious and permanent injuries and damages. Christina suffers from severe and permanent injury, mental suffering and emotional distress, pain and suffering, and pecuniary loss. Crystal suffers from emotional distress, mental suffering, and pecuniary loss.

126.    As a direct and proximate result of the negligent acts and omissions of Defendants' employees Plaintiffs Christina Henley and Crystal Henley have each suffered damages in excess of $75,000.00.

## COUNT FIVE: OKLAHOMA CONSUMER PROTECTION ACT

127.   Plaintiffs adopt and incorporate the previous paragraphs as if fully set forth herein.

128.   Plaintiffs were involved in a consumer transaction involving the Medication Defendants tendered within the meaning of 15 O.S. § 15-752; 15-753.

129.   Defendants, through written representation, misled Plaintiffs and Plaintiffs detrimentally relied on the written representation that the Medication was safe for the person listed on the label.

130.   Defendants are in violation of Title 15 of the Oklahoma State Statutes in the following ways:

      a.  Breaching the express or implied warranty which resulted in Plaintiffs' economic damages and mental anguish;

      b.  Engaging in unfair or deceptive trade practices as defined by Title 15.

131.   Defendants' statements and representations constitute a producing cause of Plaintiffs' economic damages and mental anguish.

132.   As a direct result of Defendants' misrepresentation Plaintiffs have each suffered damages in excess of $75,000.00.

## COUNT SIX: FAILURE TO WARN

133.   Plaintiffs adopt and incorporate the previous paragraphs as if fully set forth herein.

134.    Walgreens has a duty to warn Christina Henley under the learned intermediary doctrine.

135.    The medication dispensed by Walgreens to Christina Henley was a prescription drug that is clearly unreasonable on its fact, and it is contraindicated and clearly inappropriate for her Christina Henley to consume.

136.    The learned intermediary doctrine does not shield a pharmacy from liability when it dispenses a prescription that is clearly unreasonable on its face or on that is contraindicated or is clearly inappropriate drug.  See *Carista v. Valuck*, 2016 OK Civ APP 66, ¶¶5-6.

137.    The Defendants duties owed to Christina and Crystal Henley under the Oklahoma Pharmacy Act are laid out in Count 1 of this First Amended Complaint.

138.    A Pharmacist may refuse to fill and dispense a prescription which appears to be improperly executed or which in his professional judgement is unsafe as presented.

139.    Had the Pharmacist taken the time to review the written prescription in comparation to the prescription entered into the system and in comparison, to the medication dispenses, the Pharmacist would have seen that the prescription dispensed was clearly unreasonable on its face as it is clearly inappropriate and contraindicated for Christina Henley based on her known medical conditions.

140.    Walgreens employees were acting in the course and scope of their employment when the prescription was dispensed, and they failed to refuse to dispense the inappropriate and contraindicated medication and failed to contact the prescribing physician about the inappropriate and contraindicate prescription before dispensing the same.

141.    Walgreens employees were acting in the course and scope of their employment when the prescription was dispensed, and they failed to warn Crystal or Christina Henley about the medication being contraindicated and inappropriate for Christina Henley.

142.    Walgreens is vicariously liable for the failure of its employees who were acting in the course and scope of their employment.

143.    As a direct and proximate cause of Walgreens negligent failure to warn and breach of the learned intermediary doctrine in regard to the receipt, processing, and dispensing of medications to Crystal and Christina Henley, both Crystal and Christina Henley suffered permanent physical and mental impairment, damage and disability.

144.    Plaintiffs' injuries were a direct and proximate result of the Defendants' actions, omissions, and misrepresentations and failure to warn and breach of the learned intermediary doctrine.

145.    But for the Defendants failure to warn and breach of the learned intermediary doctrine in the handling and filling of prescriptions resulting in their filling a prescription in the wrong name, Christina Henley would not have taken the Medication and suffered serious medical events.

146.    As a direct and proximate result of the Defendants failure to warn and breach of the learned intermediary doctrine Plaintiffs Christina Henley and Crystal Henley have each suffered damages in excess of $75,000.00.

## COUNT SEVEN: GROSS NEGLIGENCE

147.    Plaintiffs adopt and incorporate the previous paragraphs as if fully set forth herein.

148.    Defendants are keenly aware of the risks associated with the improper distribution and diversion of controlled dangerous substances.

149.    Defendants made broad assurances and promises to the state and federal government and their patients and customers about the steps that they were taking to protect patients, customers, and the public at large from improper distribution of controlled substances.

150.    There have been huge judgments as well as civil fines and other penalties assessed against pharmacies like Walgreens who knowingly and intentionally improperly distribute opioid medications like that which was distributed to Christina Henley and caused her injuries.

151.    Walgreens is one of the largest distributors of opioid medications in the State of Oklahoma.

152.    Their pattern of behavior in the improper distribution of opioid medications in this case and in others shows a reckless indifference to the consequences of their conduct.

153.    Defendants' failure to simply match the written prescription against what was entered into the system and then ultimately distributed shows that Defendants lacked even the slightest of care and diligence with regard to their responsibility as a distributor of controlled dangerous substances.

154. The lack of care in the distribution of medication here coupled with their knowledge of the plight experienced by Oklahomans in the throughs of addiction shows a willful and wanton disregard for public safety.

155. Walgreens has been previously admonished by the Federal Drug Enforcement Agency over their failure to keep appropriate records relating to the distribution of controlled dangerous substances.

156. In 2009 the DEA obtained a Show Cause Order over the practices at a San Diego Walgreens because Walgreens had no internal employee training on the distribution and dispensing of controlled dangerous substances.

157. In 2013, Walgreens entered into the largest settlement in DEA history when it agreed to pay $80,000,000 in civil penalties to resolve administrative actions against the pharmacy chain over the unprecedented number of record keeping and dispensing violations under the CSA.

158. The DEA alleged inter alia, that Walgreens negligently allowed Schedule II controlled dangerous substances to be diverted for abuse and black-market sales.[2]

159. The violations alleged by the DEA were not occurring in one store, or even one state, but were occurring systemically across the United States and throughout Walgreens' operations.

---

[2] https://www.dea.gov/press-releases/2013/06/11/walgreens-agrees-pay-record-settlement-80-million-civil-penalties-under

160.    According to the Washington Post "At the height of the opioid epidemic, Walgreens handled nearly one out of every five oxycodone and hydrocodone pills shipped to pharmacies across America."3

161.    Walgreens knows it has an obligation to control the distribution of these medications.

162.    Walgreens has been fined for failing to control the distribution of these medications.

163.    The simple fact is Walgreens does not care how many people get hurt because it will keep making money because Americans are addicted.

164.    Walgreens engaged in a conscious and voluntary act in wrongfully and improperly distributing a controlled dangerous substance to Christina Henley without a prescription.

165.    Walgreens acted without any diligence or care and in reckless disregard of the duties it owed to Crystal Henley and Christina Henley when it distributed the wrong medication.

166.    Walgreens and its employees were not only negligent in the dispensing of medication, but they were grossly negligent, and their conduct could have resulted in the death of Christina Henley.

167.    As a result of their reckless disregard Christina Henley has been permanently mentally and physically injured.  Christina Henley will never live a normal life again and

---

3 https://www.washingtonpost.com/investigations/2019/11/07/height-crisis-walgreens-handled-nearly-one-five-most-addictive-opioids/

Crystal Henley will never have the relationship she had with her sister prior to January 25, 2019.

168.    As a direct and proximate cause of Walgreens reckless disregard in the standard of care in their care, treatment, and handling of opioid prescriptions for Crystal Henley, Christina Henley suffered permanent physical and mental impairment, damage, and disability. Further Crystal Henley suffered permanent mental and emotional distress.

169.    Plaintiffs' injuries were a direct and proximate result of the Defendants' actions, omissions, and misrepresentations.

170.    But for the Defendants reckless disregard and gross negligence in the performance of its duties in the proper handling and filling of prescriptions resulting in their filling a prescription in the wrong name, Christina Henley would not have taken the Medication and suffered serious medical events and Crystal Henley would not have lost the companionship and relationship with her sister.

171.    As a direct and proximate result of the reckless disregard and gross negligence in the performance of its duties Plaintiffs Christina Henley and Crystal Henley have each suffered damages in excess of $75,000.00.

## DAMAGES

172.    Plaintiffs incorporate all previous paragraphs as if set forth fully herein.

173.    As a direct and proximate result of the occurrences that form the basis of this lawsuit, Christina suffered severe and permanent injuries.

174.    As a result of Defendants' negligent acts, Christina suffered needlessly with anxiety, pain, and illness resulting in damages more fully set forth below. Christina incurred the following damages:

a.  Reasonable past medical care and expenses incurred by Plaintiffs for the necessary care and treatment of injuries resulting from the incident complained of herein. Such charges are reasonable and were usual and customary charges for such services in Oklahoma;

b.  Reasonable and necessary medical care and expenses, which in all reasonable probability, will be incurred in the future;

c.  Physical pain and suffering in the past;

d.  Mental anguish in the past;

e.  Physical pain and suffering in the future;

f.  Mental anguish in the future;

g.  Physical impairment in the past;

h.  Physical impairment which, in all reasonable probability, will be suffered in the future;

i.  Loss of earning capacity which will, in all probability, be incurred in the future;

j.  Fear of future disease or condition;

k.  Cost of medical monitoring and prevention in the future; and

l.  Attorneys' fees.

175.    As a result of Defendants' negligent acts, Crystal incurred the following damages:

a.  Reasonable medical care and expenses in the past, present and future paid for on behalf of Christina;

b. Loss of Consortium in the past, including damages to the family relationship, loss of care, comfort, solace, companionship, protection, and services;

c. Loss of Consortium in the future including damages to the family relationship, loss of care, comfort, solace, companionship, protection, and services;

d. Mental pain and suffering over the loss and injury to her sister and concern over her future.

e. Loss of Household Services in the past and future; and

f. Attorneys' fees.

## **PUNITIVE DAMAGES**

176.    Plaintiffs incorporate all previous paragraphs as if set forth fully herein.

177.    Walgreens, acting as a pharmacy that fills prescription medications, knows that theirs is an important role that must be undertaken with extreme care and thoroughness, knowing the risk of serious harm that can foreseeably result from wrongfully filling prescriptions.

178.    Walgreens knew or did not care that there was a substantial and unnecessary risk that the conduct complained of herein would cause serious injury to others, such as but not limited to Plaintiffs.

179.    The acts and/or omissions of Walgreens which resulted in filling Crystal's prescription in the name of Christina were taken or made in reckless disregard of and for the rights of the Plaintiffs in that those actions were unreasonable under the circumstances and taken with the knowledge that there was a high probability that the acts complained of would cause serious harm and/or death to Plaintiffs.

180. As a direct result of and because of Walgreens' reckless disregard of Plaintiffs' rights, Plaintiffs are entitled to an award of punitive damages against Walgreens, in order to punish Walgreens and to dissuade Walgreens from engaging in such acts or omissions in the future, Plaintiffs are entitled to uncapped punitive damages in an amount to be determined by a jury.

181. As a result of Defendants' conduct Plaintiffs, and each of them, have suffered and will continue to suffer damages in excess of $75,000.00 and Plaintiffs should be awarded the highest amount of punitive damages allowed by law.

WHEREFORE Plaintiffs pray that this Court enter judgment in favor of Plaintiffs Crystal Henley individually and as the Guardian of Christina Henley and against Defendants for the causes of action herein and any and all other claims that this Court deems just and equitable. Plaintiffs further requests that the Court award them all damages caused, as well as interest, costs, attorneys' fees, and all other relief this Court deems just and equitable.

Respectfully Submitted,

/s/Rachel L. Bussett
Rachel Bussett, OBA #19769
Kindra Dotson, OBA #22547
Bussett Legal Group, PLLC
2201 N. Classen Blvd.
Oklahoma City, OK 73106
405-605-8073
405-212-9112 (fax)
Rachel@Bussettlegal.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that the above-entitled document was served via the ECF System on June 7, 2021 to:

Orion Strand
Steven Holden

                                        /s/Rachel L. Bussett
                                        Rachel Bussett, OBA #19769